UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TEAMSTERS ALLIED BENEFIT FUNDS,
Derivatively on Behalf of Nominal Defendant THE
MCGRAW-HILL COMPANIES, INC.,

                              Plaintiff,

                  - against -

HAROLD MCGRAW, III, JAMES ROSS, LINDA
LORIMER, SYDNEY TAUREL, EDWARD RUST,
JR., WINFRIED BISCHOFF, ROBERT MCGRAW,
DOUGLAS DRAFT, KURT SCHMOKE, PEDRO
ASPE, HILDA OCHOA-BRILLEMBOURG,
MICHAEL RAKE, ROBERT BAHASH, DAVID
STAFFORD, EMMANNUEL KORAKIS, and
KENNETH VITTOR,

                              Defendants,

                  and

THE MCGRAW-HILL COMPANIES, INC.,

                              Nominal Defendant.

**ECF CASE**

09 Civ. 140 (PGG)

**OPINION AND ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

   This is a shareholder derivative action brought by Plaintiff Teamsters Allied

Benefit Funds on behalf of Nominal Defendant The McGraw-Hill Companies and against the

directors and several officers of McGraw-Hill.  Plaintiff alleges violations of the Securities

Exchange Act and breach of fiduciary duty arising from the financial losses and other harm

suffered by the Company as a result of its allegedly inflated ratings of mortgage-backed

securities and other securitized products.

   Plaintiff filed suit against Defendants McGraw III, Ross, Lorimer, Taurel, Rust,

Jr., Bischoff, McGraw, Daft, Schmoke, Aspe, Ochoa-Brillembourg and Rake (collectively, the

"Director Defendants"), as well as Defendants Bahash, Stafford, Korakis and Vittor (collectively, the "Officer Defendants") on January 8, 2009.[1]  The Director and Officer Defendants have moved to dismiss under Fed. R. Civ. P. 8, 9(b), 12(b)(6) and 23.1 and the Private Securities Litigation Reform Act of 1995 ("PSLRA").  (Dkt. No. 13)  The Nominal Defendant joins this motion.  (Dkt. No. 9)

For the reasons set forth below, the motion to dismiss will be GRANTED as to all defendants.

## BACKGROUND

Nominal Defendant The McGraw-Hill Companies, Inc. is a New York corporation.  (Cmplt. ¶ 14)  The allegations in the Complaint concern the activities of the Financial Services Division of McGraw-Hill, which operates Standard & Poor's Ratings Services ("S&P").  (Cmplt. ¶¶ 2, 14)

According to the Complaint, S&P "provides credit ratings, research, and analysis covering fixed-income securities, other debt instruments and the entities that issue such instruments in the global capital markets."  (Cmplt. ¶¶ 2, 46)  Among the instruments to which S&P assigns ratings are mortgage-backed securities, including those backed by "risky 'subprime' home loans," and those packaged as collateralized debt obligations, or "CDO's."  (Cmplt. ¶ 47)  Plaintiff alleges that S&P assigned inflated credit ratings to these instruments in order to obtain the fees paid by issuers, thus misleading investors, damaging the Company's reputation for integrity, and exposing the Company to regulatory investigation.  (Cmplt. ¶¶ 3-6, 8-9, 78(g))

The Complaint goes on to allege that the Officer and Director Defendants "were aware of material problems with the performance of the subprime mortgage loans that were the

---

[1]  The Complaint also names Harold McGraw, Jr. as a defendant.  The claims against him were voluntarily dismissed on February 6, 2009.  (Dkt. No. 5)

foundation for the securitizations which the Company rated," but maintained high ratings of these securities in order to ensure the continued flow of "lucrative financial returns," in the form of fees paid to the Company by issuers. (Cmplt. ¶ 78(d)) The Officer and Director Defendants ignored "red flag[s]" about the potential poor performance of these products and "caused the Company to be perpetually late and/or inadequate in conducting its surveillance" of mortgage-backed securities transactions. (Cmplt. ¶ 78) The ultimate downgrading of these highly rated securities led the Company to suffer "massive revenue decreases" and "devastated" its "credibility and integrity in the marketplace." (Cmplt. ¶ 78(f), (g))

The Complaint further alleges that the Officer and Director Defendants – with knowledge that S&P's ratings were inflated and that the Company had become dependent on the profits generated by issuing those ratings – made a variety of false and misleading statements about McGraw-Hill's financial performance between July 25, 2006 and March 11, 2008. (Cmplt. ¶¶ 49-80) The alleged false and misleading statements were made in press releases and conference calls announcing earnings results (Cmplt. ¶¶ 49-52, 55-56, 58, 61, 64, 67, 72), and in submissions to the Securities and Exchange Commission (Cmplt. ¶¶ 53, 57, 60, 62, 65, 69, 76). Plaintiff also alleges that false and misleading statements were made with regard to the Company's 2007 decision to increase its dividend and to implement a stock repurchase program (Cmplt. ¶ 59), as well as in January 2008 announcements regarding the Company's condition. (Cmplt. ¶¶ 71, 73) The Complaint also alleges that Defendants failed to disclose that the Connecticut Attorney General had issued a subpoena "to McGraw-Hill as part of an antitrust investigation into the commercial debt ratings industry." (Cmplt. ¶ 68)

Plaintiff was an owner of McGraw-Hill common stock throughout the relevant time period and remains an owner of that stock today. (Cmplt. ¶ 81) On August 18, 2008,

Plaintiff made a formal demand on the McGraw-Hill Board of Directors "seeking to remedy any

legal violations committed by the Company's current and former officers and directors" between

July 25, 2006 and July 2008.  (Cmplt. ¶ 82, Ex. A)

> In the demand letter, Plaintiff made the following allegations:
>
> Throughout the Relevant Period, it appears that McGraw-Hill's Officers and Directors caused the Company to issue improper ratings in connection with collateralized debt obligations ("CDOs").  In particular, the Company's Officers and Directors condoned a practice where employees would issue ratings which were relied upon by investors in determining the creditworthiness of various financial instruments.  McGraw-Hill Officers and Directors facilitated an environment lacking in internal controls with insufficient staff to properly evaluate mortgage securities. The Company's Officers and Directors also permitted and/or encouraged employees to issue false ratings on securities in order to satisfy Wall Street expectations, and artificially adjust commercial-mortgage rating criteria in response to Wall Street pressure.

(Cmplt. Ex. A)  Plaintiff further claimed that Defendants' misconduct had "significantly

damaged the credibility of McGraw-Hill," and led to investigations by the New York Attorney

General and the SEC.  Id.

With respect to the Company's internal controls, press releases and public filings,

Plaintiff charged that the directors had breached their fiduciary duty to the Company "by failing

to properly supervise and monitor the adequacy of McGraw-Hills' internal controls, permitting

the omissions to remain undisclosed, and allowing misleading statements and filings to be issued

and disseminated."  Id.

Plaintiff demanded that the Board "investigate and bring forward all appropriate

legal action," "require the Officers and Directors to account to McGraw-Hill for all damages

sustained or to be sustained by the Company by reason of the wrongs and misconduct

complained of herein," and require that the Officers and Directors found to have breached their

fiduciary duties return all payment made to them during the period of the breach, and pay interest "on the amount of damages sustained by the Company as a result of their culpable conduct."  Id.

On October 3, 2008, the Board responded to Plaintiff's demand letter.  (Cmplt. ¶ 85, Ex. C)  The Board noted that it had "undertaken a review of the matters that are described in general terms in your letter to determine its course of conduct at this time with respect to your assertions.  Following that review, the Board has determined not to pursue legal action against any Officer or Director at this time. . . ."  (Cmplt. Ex. C)

The Board set forth several reasons for its decision not to pursue legal action, including the following:

> Pursuant to Section 402(b) of Business Corporation Law of the State of New York, the liability of the Company's Directors to the Company or its stockholders for damages for breach of duty as a Director is eliminated to the fullest extent permitted by law.  Under New York law, accordingly, any legal claims against a Director would have to establish bad faith, intentional misconduct, knowing violation of law, or actions for personal financial profit in order to state a claim (see, e.g., Business Corporation Law § 402(b)). There are no facts or even assertions in your letter that could support any such claim against any Officer or Director and the Directors are aware of none.

> The Company's By-Laws also provide that the Company shall indemnify any person who is made party to a litigation because he or she was or is an Officer or Director of the Company, to the full extent permitted by law.  Given the nature of your assertions as set forth above, there could be no basis for the Company to recover any amount from any Officer or Director that would not be fully repaid by the Company to the Officer or Director plus counsel fees. The Company thus could have no expectation of a net recovery against any Officer or Director.

> In addition, the Company is presently defending nine actions relating to its issuance of ratings during the time period indicated in your letter.  The Company is also responding to ongoing investigations by the Connecticut and Massachusetts State Attorneys General, has participated in a detailed examination by the Securities and Exchange Commission (and is subject to

continuing oversight by the SEC) and recently resolved by agreement an investigation by the New York Attorney General. Given that context, the Board has concluded that proceeding in the manner your letter indicates, while these actions and investigations remain pending, would be harmful to the interests of the Company in its defense of those litigations:  it would be disruptive to the defense of those matters; and it could be harmful to the Company's interest in preserving all applicable privileges and protections.

The Board has also taken note that your letter parrots – in the vaguest possible terms – criticism that has been made in the media and other public sources concerning ratings activity during the relevant time period.  The Board has determined that such media and public criticism – which would only be exacerbated and prolonged by the course of conduct you propose – is harmful to the interests of the Company and that the Company's interest in protecting its reputation further mitigates against pursuing at this time the course of conduct your letter advocates.

(Cmplt. Ex. C)  The Board also detailed in its letter "leadership actions" McGraw-Hill was already implementing "aimed at strengthening the ratings process."  (Cmplt. Ex. C)

In response to the Board's rejection of its demand, Plaintiff filed this suit asserting eight causes of action, including violations of Section 10(b) and Section 20(a) of the Securities Exchange Act (Cmplt. ¶¶ 90-96), and state law claims for breach of fiduciary duty (Cmplt. ¶¶ 97-109), gross mismanagement (Cmplt. ¶¶ 110-13), corporate waste (Cmplt. ¶¶ 124-26), and unjust enrichment.  (Cmplt. ¶¶ 127-29)

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.  "In considering a motion to dismiss[, however,] the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave.

Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead

Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable

inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir.

2006)).

I.   **PLAINTIFF'S DEMAND IS NOT ADEQUATE TO
     SUPPORT THE COMPLAINT'S SECURITIES LAW CLAIMS**

  A shareholder derivative suit "permits an individual shareholder to bring 'suit to

enforce a *corporate* cause of action against officers, directors and third parties.'" Kamen v.

Kemper Fin. Servs., 500 U.S. 90, 95 (1991) (quoting Ross v. Bernhard, 396 U.S. 531, 534

(1970)) (emphasis in original). "[T]o prevent abuse of this right, courts have traditionally

imposed a requirement that the shareholder demonstrate 'that the corporation itself had refused

to proceed after suitable demand, unless excused by extraordinary conditions.'" Stoner v.

Walsh, 772 F. Supp. 790, 795 (S.D.N.Y. 1991) (quoting Kamen, 500 U.S. at 95).

  This requirement is codified in Fed. R. Civ. P. 23.1, which provides that the

Complaint in any derivative suit "must be verified and must . . . state with particularity:  (A) any

effort by the plaintiff to obtain the desired action from the directors or comparable authority and,

if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action

or not making the effort." Fed. R. Civ. P. 23.1(b). "Rule 23.1 is a rule of pleading that creates a

federal standard as to the specificity of facts alleged with regard to efforts made to urge a

corporation's directors to bring the action in question.  However, the adequacy of those efforts is

to be determined by state law. . . ." RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1330 (2d

Cir. 1991).  Because McGraw-Hill is incorporated in New York, New York law governs the

adequacy of Plaintiff's demand. See id.; Kalin v. Xanboo, Inc., 526 F. Supp. 2d 392, 409

(S.D.N.Y. 2007).

The New York Business Corporation Law provides that the complaint in a shareholder derivative action "shall set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reasons for not making such effort."[2] N.Y.B.C.L. § 626(c) (2010).  The "'[d]emand to sue need not assume a particular form nor need it be made in any special language.'"  Kalin, 526 F. Supp. 2d at 409 (quoting Ripley v. Int'l Ry. of Cent. Am., 8 A.D.2d 310, 317 (1st Dep't 1959)).  However, "it must inform the board 'with particularity' of the complained of acts and the potential defendants."  Stoner, 772 F. Supp. at 796 (quoting Syracuse Television, Inc. v. Channel 9, Syracuse, Inc., 273 N.Y.S.2d 16, 25 (Sup. Ct. Onondaga Co. 1966)).  "A demand must fairly and adequately apprise the directors of the potential cause of action so that they, in the first instance, can discharge their duty of authorizing actions that 'in their *considered* opinion . . . [are] in the best interests of the corporation.'"  Stoner, 772 F. Supp. at 796 (quoting Barr v. Wackman, 36 N.Y.2d 371, 378 (1975)) (emphasis in Barr); see also Kalin, 526 F. Supp. 2d at 409-10.

The demand requirement is "intended 'to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs.'"  Lewis v. Graves, 701 F.2d 245, 247 (1983) (quoting Elfenbein v. Gulf & Western Indus., Inc., 590 F.2d 445, 450 (2d Cir. 1978)).  The requirement also "'promotes policies of judicial economy because a demand may result in corrective action from the body that is usually in the best position to correct and investigate alleged abuses, and is also designed to discourage

---

[2]  Under both Rule 23.1 and New York law, a plaintiff in a derivative suit is excused from the demand requirement if making the demand would have been futile.  See Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 138 (2d Cir. 2004); Marx v. Akers, 88 N.Y.2d 189, 193-94 (1996). Here, however, Plaintiff submitted a demand letter to the Board and does not argue futility. Instead, Plaintiff contends that the Board's refusal to accede to its demand was improper.

'strike suits' by shareholders making reckless charges for personal gain rather than corporate benefit.'" Kalin, 526 F. Supp. 2d at 410 (quoting Stoner, 772 F. Supp. at 796).

Here, Plaintiff's demand letter is not adequate to support the federal securities law violations alleged in the Complaint. New York law requires that a formal demand preceding a shareholder derivative suit "must inform the board 'with particularity' of the complained of acts and the potential defendants." Stoner, 772 F. Supp. at 796 (quoting Syracuse Television, Inc., 273 N.Y.S.2d at 25); Kalin, 526 F. Supp. 2d at 409. Plaintiff's demand letter does not allude to Section 10(b) or 20(a) of the Securities Exchange Act, nor does it allege facts that would provide a basis for a Section 10(b) claim or a Section 20(a) claim founded on a Section 10(b) violation.[3] See Cmplt. Ex. A.

In order to state a claim under Section 10(b) of the Securities Exchange Act, a plaintiff must establish that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009) (citations omitted). Because shareholder derivative actions are brought on behalf of a corporation, a plaintiff raising a Section 10(b) claim must allege, inter alia, that the corporation relied on a defendant's fraudulent statement in connection with the purchase or sale of securities and suffered injury as a result. See Frankel v. Slotkin, 984 F.2d 1328, 1332 (2d Cir. 1993).

---

[3] Section 20(a) of the Securities Exchange Act extends liability for violations of the Act to those "who, directly or indirectly, control[] any person liable" under another provision of the Act. 15 U.S.C. §78t. Liability under Section 20(a) is thus predicated upon a finding of "'a primary violation [– here, the alleged Section 10(b) violation –] by the controlled person.'" Rombach v. Chang, 355 F.3d 164, 177-78 (2d Cir. 2004) (quoting SEC v. First Jersey Secs., Inc., 101 F.3d 1450, 1472-73 (2d Cir. 1996)); Aimis Art Corp. v. N. Trust Secs., 641 F. Supp. 2d 314, 319 (S.D.N.Y. 2009).

9

The demand letter here addresses the individual defendants' alleged failure to properly supervise the Company's rating process, and to provide for adequate internal controls and staff "to properly evaluate mortgage securities."  (Cmplt. Ex. A) The demand letter further claims that the individual defendants "permitted and/or encouraged employees to issue false [and inflated] ratings" of these securities in response to "Wall Street expectations . . . [and] pressure." Id.  Although the letter might be read as asserting that <u>investors</u> who relied on the Company's ratings were defrauded, it does not begin to suggest that the individual defendants defrauded the Company.[4]  The letter likewise does not mention any purchase or sale of securities by the Company, nor does it explain how McGraw-Hill might be said to have relied on the alleged omissions or misleading statements.  <u>See id.</u>

For all of these reasons, Plaintiff's demand letter cannot be said to have "fairly and adequately apprise[d] the directors" of the federal securities law violations alleged in the Complaint.  <u>See</u> <u>Stoner</u>, 772 F. Supp. at 796; <u>see also</u> <u>Levner v. Saud</u>, 903 F. Supp. 452, 456 (S.D.N.Y. 1994) (finding that the demand made upon the board of directors was inadequate because "[t]he factual basis of the demand to take action . . . simply was not adequately particular to alert the [] board as to the corporate injury, or to the specific relief sought").  Accordingly, Plaintiff's federal securities law claims will be dismissed for failure to make an adequate demand upon the Board.

---

[4]  While the demand letter also alleges that the Board "permitt[ed] [] omissions to remain undisclosed, and allow[ed] misleading statements and filings to be issued and disseminated," (Cmplt. Ex. A), these allegations are made in the context of Plaintiff's claim that the Directors breached their fiduciary duties under New York law.  <u>Id.</u>

## II.    PLAINTIFF SETS FORTH NO BASIS FOR OVERTURNING THE BOARD'S REJECTION OF ITS DEMAND

Even if Plaintiff's demand were adequate to support the federal securities law violations alleged in the Complaint, dismissal would still be required, because Plaintiff has failed to allege facts demonstrating that the Board's rejection of its demand was not made in good faith by disinterested directors.

Under New York law, a board's decision to reject a shareholder's demand to pursue legal claims – when made in good faith by disinterested directors – is entitled to judicial deference under the "business judgment doctrine." Stoner, 772 F. Supp. at 799. Under this doctrine,

> the decision whether and to what extent to explore and prosecute such claims lies within the judgment and control of the corporation's board of directors. Necessarily such decision must be predicated on the weighing and balancing of a variety of disparate considerations to reach a considered conclusion as to what course of action is best calculated to protect and advance the interests of the corporation. This is the essence of the responsibility and role of the board of directors, and courts may not intrude to interfere.

Auerbach v. Bennett, 47 N.Y.2d 619, 630 (1979).

Accordingly, "[u]nder New York law, when disinterested directors decide not to sue on behalf of the corporation, their decision is beyond judicial inquiry if taken 'in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes.'" Stoner, 772 F. Supp. at 798-99 (quoting Auerbach, 47 N.Y.2d at 629). The business judgment doctrine reflects a presumption that directors acted properly and in good faith, Crouse-Hinds Co. v. Internorth, Inc., 634 F.2d 690, 702 (2d Cir. 1980); Stoner, 772 F. Supp. at 800, and requires that a plaintiff in a derivative action not only plead that the board rejected his demand, but also allege that the directors were not disinterested and did not employ "appropriate and

sufficient investigative procedures" in considering the demand.  <u>Stoner</u>, 772 F. Supp. at 800;

<u>Auerbach</u>, 47 N.Y.2d at 631.

          The Complaint pleads no facts concerning these matters.  Indeed, the Complaint's

discussion of the Board's response to Plaintiff's demand is limited to the following sentence:

"On October 3, 2008, the Board responded to Plaintiff's formal demand and refused to pursue

any legal action against any director or officer as demanded in the Demand Letter."  (Cmplt.

¶ 85)  The Complaint contains no discussion of whether the directors who rejected the demand

were disinterested, and makes no reference to the investigative procedures employed by the

Board in addressing the concerns set forth in the demand letter.

          Plaintiff argues that the directors cannot be considered disinterested because they

are accused of wrongdoing in the demand letter and in the Complaint.  (Pltf. Br. 8; Cmplt. ¶ 10)

Both the New York Court of Appeals and the Second Circuit, however, have explicitly rejected

Plaintiff's argument that the mere naming of directors in a Complaint is sufficient to establish

that they are interested persons.  <u>Marx</u>, 88 N.Y.2d at 199-200 ("[I]t is not sufficient merely to

name a majority of the directors as parties defendant with conclusory allegations of wrongdoing

or control by wrongdoers to justify failure to make a demand."); <u>Lewis</u>, 701 F.2d at 249 (holding

that naming directors as defendants is insufficient to demonstrate that they are interested parties

because a contrary ruling "would mean that plaintiffs could readily circumvent the demand

requirement merely by naming as defendants all members of the derivative corporation's board.

Permitting plaintiffs to employ this tactic would eviscerate Rule 23.1. . . .).

          Plaintiff's reliance on <u>Barr v. Wackman</u>, 36 N.Y.2d 371 (1975), is misplaced.  In

<u>Barr</u>, in the context of a futility claim, the New York Court of Appeals stated that "demand will

be excused where the alleged wrongdoers control or comprise a majority of the directors."  <u>Barr</u>,

36 N.Y.2d at 379.  Barr makes clear, however, that "merely . . . nam[ing] a majority of the

directors as parties defendant with conclusory allegations of wrongdoing" is not sufficient.  Id.

Moreover, in Marx, the Court of Appeals cautioned that "various courts have overlooked the

explicit warning [in Barr] that conclusory allegations of wrongdoing against each member of the

board are not sufficient to excuse demand and have misinterpreted Barr as excusing demand

whenever a majority of the board members who approved the transaction are named as

defendants."  88 N.Y.2d at 199-200.

        Here, the Complaint does not plead any facts demonstrating that the directors are

interested parties who did not appropriately investigate the issues raised in the demand letter.

With respect to interest, Plaintiff argues, in a conclusory fashion (Pltf. Br. 8), that the Board is

not disinterested because the directors were actively involved in the alleged misconduct.  The

Complaint does not plead any "particularized allegations of bias or self interest," however, and is

therefore insufficient.  See Lewis, 701 F.2d at 249.  Similarly, with respect to Plaintiff's

argument in its opposition brief that the Board failed to properly investigate, Plaintiff attempts to

shift the burden to Defendants, arguing that "there is no indication that Defendants undertook

any investigative procedure prior to rejecting Plaintiff's demand."  (Pltf. Br. 8)  The case law is

clear, however, that "[t]here is a presumption that a board's decision was the exercise of valid

business judgment," Stoner, 772 F. Supp. at 800 (citing Crouse-Hinds Co. v. Internorth, Inc., 634

F.2d at 702), and that it is Plaintiff's burden to plead facts demonstrating that the Board failed to

employ "appropriate and sufficient investigative procedures" in deciding not to pursue the claims

outlined in Plaintiff's demand letter.  See Stoner, 772 F. Supp. at 800; Auerbach, 47 N.Y.2d at

631.

Accordingly, even if Plaintiff's federal securities law claims had been the subject of an adequate demand on the Board, those claims would still be insufficient for failure to allege facts demonstrating that the Board's rejection of the demand was not made in good faith by disinterested directors.

## III.    THE COMPLAINT FAILS TO STATE A FEDERAL CLAIM

"When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).  A Complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. 544).

### A.    The Complaint Fails to State a Claim for
### Violations of Section 10(b) of the Securities Exchange Act

A plaintiff in a shareholder derivative action bringing a claim under Section 10(b) of the Securities Exchange Act must establish that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter," and that the corporation relied on the defendant's false statements or omissions, causing injury to the company.  See ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009) (citations omitted); Frankel v. Slotkin, 984

F.2d 1328, 1332 (2d Cir. 1993).  Moreover, Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

### 1. The Complaint Fails to Plead a Purchase or Sale of Securities, Reliance, or Resulting Injury

The Complaint fails to allege several of the required elements of a claim for relief under Section 10(b) of the Securities Exchange Act, including:  (1) any purchase or sale of securities, (2) reliance by the Company on the Defendants' claimed misstatements or omissions in connection with the purchase or sale of securities, or (3) resulting injury to the Company.

In its opposition brief, Plaintiff attempts to cure these defects by arguing that the Company's issuance of stock options to certain defendants constitutes an actionable sale of securities.  (Pltf. Br. 20)  These alleged facts and this theory of liability are not pleaded in the Complaint, however, and "[i]t is well-settled that a 'claim for relief may not be amended by the briefs in opposition to a motion to dismiss.'"  Yucyco, Ltd. v. Republic of Slovenia, 984 F. Supp. 209, 216-217 (S.D.N.Y. 1997) (quoting Telectronics Proprietary, Ltd. v. Medtronic, Inc., 687 F. Supp. 832, 836 (S.D.N.Y. 1988)).  Because the Complaint does not state a claim under Section 10(b), Plaintiff's securities law claims must be dismissed.[5]

### 2. The Complaint Fails to Allege Scienter

Rule 9(b) sets forth a "relaxation" of the specificity requirement in pleading the scienter element of fraud claims, requiring only that they be "alleged generally."  See Shields v.

---

[5]  Even if this Court were to consider the allegations set forth in Plaintiff's opposition brief, they would be insufficient to sustain a claim for relief.  Plaintiff has failed to allege that McGraw-Hill relied upon Defendants' false statements and omissions in issuing the stock options, and offers only a conclusory allegation of harm resulting from the issuance of stock options.  It is likewise unclear which defendants received stock options.

Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994); Fed. R. Civ. P. 9(b). However, the

Second Circuit has made clear that this "relaxation… 'must not be mistaken for license to base

claims of fraud on speculation and conclusory allegations,'" id. (quoting O'Brien v. Nat'l Prop.

Analysts Partners, 396 F.2d 674, 676 (2d Cir. 1991)), and has long required plaintiffs making

fraud claims to "allege facts that give rise to a strong inference of fraudulent intent." Novak v.

Kasaks, 216 F.3d 300, 307 (2d Cir. 2000); see also Shields, 25 F.3d at 1128.

        The PSLRA imposes additional pleading requirements as to scienter. Under the

Act, scienter is adequately pled only where "a reasonable person would deem the inference of

scienter cogent and at least as compelling as any opposing inference one could draw from the

facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 324 (2007). In

the Second Circuit, a "strong inference" of scienter "may be established either (a) by alleging

facts to show that defendants had both motive and opportunity to commit fraud, or (b) by

alleging facts that constitute strong circumstantial evidence of conscious misbehavior or

recklessness." Novak, 216 F.3d at 307; see also ECA & Local 134 IBEW Joint Pension Trust of

Chi., 553 F.3d at 198.

        Motive to commit fraud entails "'concrete benefits that could be realized by one

or more of the false statements and wrongful nondisclosures alleged.'" Novak, 216 F.3d at 307

(quoting Shields, 25 F.3d at 1130). A plaintiff may not rely on "motives possessed by virtually

all corporate insiders," but instead must allege "that defendants benefitted in some concrete and

personal way from the purported fraud." Novak, 216 F.3d at 307-08. Thus, in alleging motive,

"'a plaintiff must do more than merely charge that executives aim to prolong the benefits of the

positions they hold.'" Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001) (quoting Shields, 25

F.3d at 1130). Similarly, "the desire for the corporation to appear profitable," as well as "the

desire to keep stock prices high to increase officer compensation" are "insufficient motives." Kalnit, 264 F.3d at 139.

Here, Plaintiff alleges that Defendants "were motivated to pursue their wrongful course of conduct in order to maintain the Company's substantial profits garnered through issuing high ratings on securitizations" (Cmplt. ¶ 80), and nothing in the Complaint indicates "that defendants benefitted in some concrete and personal way from the purported fraud." See Novak, 216 F.3d at 307-08. The Complaint's motive allegations thus fall squarely within the category deemed insufficient in Kalnit. See Kalnit, 264 F.3d at 139.

Plaintiff may also satisfy the scienter requirement by "'alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" Kalnit, 264 F.3d at 138-39 (quoting Acito v. Imcera Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)). Where "motive is not apparent . . . the strength of the circumstantial allegations must be correspondingly greater." Kalnit, 264 F.3d at 142 (quoting Beck v. Mfrs. Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987)).

Plaintiffs pursuing a "conscious misbehavior or recklessness" theory must allege conduct that is, "at the least . . . highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Kalnit, 264 F.3d at 142 (quoting Honeyman v. Hoyt, 220 F.3d 36, 39 (2d Cir. 2000)). Such claims "typically" survive motions to dismiss when based on specific allegations demonstrating "defendants' knowledge of facts or access to information contradicting their public statements." Id. (quoting Novak, 216 F.3d at 308). A failure "to check information [defendants] had a duty to monitor" may also give rise to a strong inference of recklessness. Novak, 216 F.3d at 311; see also Nathel v. Siegal, 592

F. Supp. 2d 452, 464 (S.D.N.Y. 2008).  In such circumstances, "defendants knew or, more importantly should have known that they were misrepresenting material facts related to the corporation."  Kalnit, 264 F.3d at 142.

Plaintiff's allegations of conscious misbehavior or recklessness boil down to the following theory:

> Because of the Individual Defendants' positions with the Company, they had access to adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information to them in connection therewith.
>
> Each of the Individual Defendants, by virtue of their positions as directors and/or officers of the Company, directly participated in the management of the Company, was directly involved in day to day operations of the Company at the highest levels and/or was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition. . . . Defendants were aware or recklessly disregarded that false and misleading statements were being issued regarding the Company, and approved or ratified these statements. . . .

Cmplt. ¶¶ 38-39; see also Pltf. Br. 16, 18.

"Courts have routinely rejected the attempt to plead scienter based on allegations that because of defendants' board membership and/or their executive managerial positions, they had access to information concerning the company's adverse financial outlook."  In re Health Mgmt. Sys., Inc. Sec. Litig., No. 97 Civ. 1865 (HB), 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998); see also Police & Fire Ret. Sys. v. SafeNet, Inc., 645 F. Supp. 2d 210, 234 (S.D.N.Y.

2009); Goplen v. 51job, Inc., 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006).  Plaintiff's scienter

allegations are therefore insufficient.[6]  (Cmplt. ¶¶ 38-39)

        Plaintiff argues that the Complaint's reference to the investigations conducted by

the Connecticut, Massachusetts and New York Attorneys General, and the SEC, of the

Company's credit ratings – which began in August 2007 – significantly bolster the Complaint's

scienter allegations.  (Pltf. Br. 18-19; see Cmplt. ¶¶ 68, 69, 76)  There is case support for the

proposition that government investigations may provide notice of fraud, and thus buttress a

scienter finding as to post-investigation conduct.  In re Oxford Health Plans, Inc. Sec. Litig., 51

F. Supp. 2d 290, 295 (S.D.N.Y. 1999).

        Here, the government investigations cited in the Complaint are irrelevant to

alleged misconduct that occurred before August 2007, which accounts for most of the allegations

in the Complaint.  With respect to acts of misconduct that occurred after August 2007, the

---

[6]  Plaintiff attempts to demonstrate scienter through reference to the group pleading doctrine. (Pltf. Br. 15-18)  While that doctrine is relevant to allegations of false statements or omissions, it cannot be relied on to establish scienter.  In re AstraZeneca Sec. Litig., 559 F. Supp. 2d 453, 472 (S.D.N.Y. 2008) ("The group pleading doctrine cannot apply to create a presumption of scienter as to individual defendants."); In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611, 645 (S.D.N.Y. 2007).  The two cases cited by Plaintiff reinforce this distinction.  In SEC v. Espuelas, 579 F. Supp. 2d 461 (S.D.N.Y. 2008), the court permitted the use of the group pleading doctrine "to attribute fraudulent statements to" particular defendants.  579 F. Supp. 2d at 472-73.  The court went on, however, to conduct an individualized scienter analysis as to each defendant, wholly independent of its discussion of group pleading.  Id. at 473-83.  Indeed, the court noted that "the group pleading doctrine can only be invoked to attribute fraudulent statements to defendants, remaining wholly insufficient to plead scienter."  Id. at 482 n. 10.  In In re BISYS Securities Litigation, 397 F. Supp. 2d 430 (S.D.N.Y. 2005), the court similarly used the group pleading doctrine in attributing false statements to defendants.  Id. at 440-41.  The court made clear, however, that the group pleading doctrine "merely gives plaintiffs the benefit of a presumption that certain kinds of statements were made by certain kinds of defendants.  It does not permit plaintiffs to presume the state of mind of those defendants at the time the alleged misstatements were made."  Id. at 440.

existence of the government investigations is not, in and of itself, sufficient to establish scienter, as Plaintiff acknowledges.  See Pltf. Br. 18; In re Oxford Health Plans, Inc. Sec. Litig., 51 F. Supp. at 295.

**B.      The Complaint Fails to State a Claim for
         Violations of Section 20(a) of the Securities Exchange Act**

Section 20(a) of the Securities Exchange Act imposes liability upon those "who, directly or indirectly, control[] any person liable" under another provision of the Act.  See 15 U.S.C. §78t.  Liability under § 20(a) "is necessarily predicated on a primary violation of securities law."  Rombach v. Chang, 355 F.3d 164, 178 (2d Cir. 2004).  Here, the primary violation alleged is the commission of securities fraud under Section 10(b) of the Securities Exchange Act.  Because Plaintiff's Section 10(b) claim must be dismissed, the Section 20(a) claim will likewise be dismissed.  See Rombach, 355 F.3d at 178 ("Because we have already determined that the district court properly dismissed the primary securities claims against the individual defendants, these secondary claims must also be dismissed.").

**IV.     THIS COURT WILL NOT EXERCISE SUPPLEMENTAL
         JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS**

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  Schaefer v. Town of Victor, 457 F.3d 188, 210 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  "When all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."  Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 103 (2d Cir. 1998) (citing Carnegie-Mellon Univ., 484 U.S. at 350).  There is no reason to deviate from this rule here.

## V.    **PLAINTIFF IS GRANTED LEAVE TO AMEND THE COMPLAINT.**

"Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." Jin v. Metropolitan Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002). "[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 91 (2d Cir. 2003) (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). Plaintiff is granted leave to amend the Complaint to address its deficiencies.[7]

## CONCLUSION

For the reasons stated, the motions to dismiss filed by the Director and Officer Defendants and Nominal Defendant McGraw-Hill are GRANTED. Plaintiff is directed to file an Amended Complaint, if any, by March 22, 2010.

The Clerk of the Court is directed to terminate the following motions: Docket Nos. 9, 13.

Dated: New York, New York
        March 10, 2010

SO ORDERED.

Paul G. Gardephe
United States District Judge

---

[7] As this opinion makes clear, Plaintiff's federal claims fail for a variety of reasons. Defendants have presented additional arguments as to why the Complaint must be dismissed. The Court has not rejected these arguments but simply does not reach them, given the multiple deficiencies discussed above.